**Jeffrey Alan HAYWOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–07–01150–CR.

Court of Appeals of Texas, Dallas.

May 17, 2011.

Pamela J. Lakatos, Plano, TX, Wm. Reagan Wynn, Kearney & Wynn, Fort Worth, TX, for Appellant.

Craig Watkins, Dallas County District Attorney, Larissa Roeder, Assistant Criminal District Attorney, Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Jeffrey Alan Haywood appeals his conviction for tampering with physical evidence. *See* TEX. PENAL CODE ANN. § 37.09(a)(2) (West 2003). In three points of error, Haywood challenges the sufficiency of the evidence to support his conviction and the trial court's denial of his requests to set aside the indictment because (1) the prosecuting attorney was disqualified due to a conflict of interest and (2) under the doctrine of *in pari materia*, he should have been prosecuted under subsection 37.10(a) for tampering with a governmental record. We affirm.

## BACKGROUND

Haywood was a narcotics detective in the Dallas Police Department. Based on information another narcotics officer, detective Mark Delapaz, obtained from a confidential informant, Haywood secured a warrant to search an auto repair garage for cocaine. That day, Haywood, Delapaz, and other officers executed the warrant, arresting two individuals and seizing seven plastic-wrapped packages of powder. The following day, Haywood completed a prosecution report in which he stated he field tested "6239.4g cocaine," indicating he sampled the powder from the seized packages and received a positive result on the presence of cocaine on a presumptive test. A presumptive field test and prosecution report were the only prerequisites to filing

a narcotics case at the time. The grand jury returned indictments on the two individuals arrested.

Over the course of that year, Haywood's narcotics street squad handled multiple large seizures of purported cocaine. An investigation regarding these seizures revealed that the powder was "sheetrock" or "pool chalk." In 2003, Dallas County Criminal District Attorney Bill Hill appointed Daniel Hagood as "Special Prosecutor" to investigate Delapaz and his involvement in the drug cases commonly referred to as the "fake drug" cases. The scope of Hagood's appointment was later broadened by Hill to "include investigating and, if appropriate, prosecuting any other individuals you may target as the course of your investigation unfolds." Hagood took his oath of office in December 2003, and two Department of Public Safety sergeants were assigned to investigate Haywood's street squad under Hagood's direction. Delapaz ultimately became the primary focus of the investigation, although the district attorney's office was also investigated. During this time, there was also a federal investigation into Delapaz's street squad. *See Delapaz v. State*, 228 S.W.3d 183, 194 (Tex. App.-Dallas 2007, pet ref'd).

Haywood logged the seven packages at issue here, labeling them "evidence" rather than "destroy." The Public Integrity Unit of the Dallas Police Department sent these packages to the crime laboratory at the Southwestern Institute of Forensic Sciences (SWIFS) for analysis. Of the seven packages, the laboratory reported that only two packages contained cocaine, but in amounts "insufficient to quantitate." One of the DPS sergeants later testified that, in his expert opinion, there was no evidence the powder seized was field tested, contrary to Haywood's statement in the prosecution report. Haywood was in-dicted in 2004 for tampering with physical evidence.

Haywood filed a motion to set aside his indictment, claiming it was inappropriate for Hagood to prosecute Haywood. The trial court denied Haywood's motion and permitted Haywood to file a written offer of proof of his proposed evidence.

Haywood also filed a motion to set aside or quash the indictment, arguing that the doctrine of *in pari materia* required him to be prosecuted and convicted under subsection 37.10(a)(1) of the penal code rather than subsection 37.09(a)(2). The trial court ultimately denied the motion.

The jury found Haywood guilty of tampering with physical evidence under subsection 37.09(a)(2). This appeal followed.

## DISCUSSION

### Point of Error One: Sufficiency of the Evidence for Conviction

In his first point of error, Haywood asserts the evidence was factually insufficient to support the jury's conclusion the State had proved Haywood tampered with physical evidence. Specifically, Haywood contends the State failed to prove beyond a reasonable doubt a negative—that Haywood had failed to perform field testing on a package of purported cocaine that he had claimed to have tested.

#### Standard of Review

Pursuant to the court of criminal appeals's decision in *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App.2010) (plurality op.), we must apply the *Jackson v. Virginia* standard in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894–95. Under that standard, we examine all the evidence in the light most favorable to the

verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks,* 323 S.W.3d at 894–95. We defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

Haywood was charged with tampering with physical evidence under subsection 37.09(a)(2) of the penal code. Under this subsection, a person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding." TEX. PENAL CODE ANN. § 37.09(a)(2). The amended indictment provides in relevant part that Haywood, knowing an official proceeding or an investigation was pending and in progress, with intent to affect the outcome of the official proceeding and investigation:

> did make and present and use a document, to-wit: a Dallas Police Department prosecution report . . . with knowledge of its falsity in that the defendant knew that the prosecution report contained defendant's false statement and false information that defendant field tested the controlled substance and that the controlled substance field tested positive for cocaine[.]

Haywood restricts his argument regarding his sufficiency challenge to "the only real factual issue for the jury to resolve"— whether the State proved beyond a reasonable doubt that he did *not* field test the powder.

### Analysis

■ Haywood bases his sufficiency challenge to the jury's verdict he did not field test the powder on (1) the lack of direct evidence, (2) the nature of the evidence presented—"controverted, equivocal and imprecise," and (3) the State's difficult burden of proving a negative.

Witnesses testified at trial that the typical method of sampling "kilos" of cocaine for field-testing purposes is by cutting into the kilo with a sharp object such as a knife, extracting a sample, and later resealing the package to prevent leakage. Haywood was questioned both in the federal investigation into his street squad as well as during a deposition for a civil matter involving Delapaz. At trial, both the attorney conducting the civil deposition as well as the federal investigator testified that Haywood explained he typically would cut open a purported kilo of cocaine with his pocketknife to obtain a sample of powder for field-testing purposes. The federal investigator also testified that it was only when the investigator pressed Haywood on the fact that the seven packages seized had no holes and were not leaking that Haywood "speculated" he may have unwrapped one of the packages to obtain a sample. An unrelated plastic-wrapped package for which Haywood was listed as the field-testing officer also was admitted into evidence. The package had a triangular cut into the plastic, which was leaking white powder. An officer testified he and Haywood previously seized this package and, to his recollection, the hole was where Haywood cut into the package to sample the powder. Based on this evidence, the jury could have concluded Haywood sampled substances in similar packaging by cutting the plastic wrapping and extracting powder with his pocketknife. Testimony at trial, however, supported the conclusion that the packages had not been pierced

with a sharp object for purposes of obtaining a sample of the powder.

In his defense, Haywood presented witnesses who testified that the lack of holes or tears in the wrappings did not exclude the possibility a field test was performed. They opined it was possible to sample powder for a field test by unwrapping drug packaging. These witnesses admitted they were personal friends or former co-workers of Haywood, and several had not seen the evidence at trial or the specific packages at issue. One witness also testified he attempted to unwrap a plastic-wrapped kilo of cocaine, and he later stated he "couldn't do it" because "it was just too difficult."

In contrast to the typical kilos of cocaine that contain pressed powder, the evidence here showed the seized powder was "lumpy" and like "bath powder" that could create a "cloud" if loose from its wrapping. Yet, when delivered to SWIFS for analysis or to the federal investigators, the same packages were sealed and not leaking any powder. Several witnesses also testified they would not be able to unwrap the packages and rewrap them to achieve the same appearance; the powder would get loose, and the plastic would not be wrapped as tightly. As the judge of credibility and in light of other evidence, the jury was free to disregard the suggestion by Haywood's witnesses that the packages could have been field tested by unwrapping the plastic layers. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

The jury also heard evidence of Haywood's own statements prior to trial. The two lead DPS investigators testified that, before he was indicted, they told Haywood they believed several officers, including him, were not field testing drugs. Concerned that Haywood would perjure himself before the grand jury, the investigators told Haywood the special prosecutor would not pursue Haywood if he told the truth. Haywood responded that he could not do that because, if he did, he would lose his security clearance and his current position with the federal air marshals. One of the investigators also testified that security clearance is lost if a person is "less than candid with interviews" or if testimony is "shaded in some way." Haywood never told the investigators he had field tested the powder in the packages. Similarly, Eddie Herrera, Delapaz's former partner who subsequently was charged with perjury, testified he spoke with Haywood after Haywood was indicted. Haywood expressed uncertainty to Herrera as to whether he would testify at trial.

Haywood also argues that because two of the packages tested positive for cocaine, it was possible for him to achieve a positive result in a presumptive field test. In light of the other evidence, the jury could have concluded Haywood's statement of a positive result on the prosecution report was a fortuitous match to two of the seven laboratory tests. Similarly, Haywood suggests that his notation of "evidence" rather than "destroy" on the evidence log shows voluntary submission of the evidence in his own name and, thus, no "consciousness of guilt." Haywood's notation, however, does not foreclose the jury's conclusion Haywood did not perform the field test; rather, the jury could have inferred Haywood had no reason to believe his testing would be questioned.

■ Examining the evidence in the light most favorable to the verdict under the *Jackson* standard, we conclude the evidence is sufficient for a rational trier of fact to conclude beyond a reasonable doubt Haywood did not field test the substance contained within the seized packages. Although there is no direct evidence Haywood did not field test the powder, Hay-

wood's conviction based on circumstantial evidence does not, in itself, require reversal of the conviction under our sufficiency analysis. *See King v. State*, 29 S.W.3d 556, 565 (Tex.Crim.App.2000). And while proof of a negative might be more difficult, that does not mean it was impossible for the jury to conclude the State met its burden. *Cf. Mullaney v. Wilbur*, 421 U.S. 684, 702, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (proving a negative not unique in our system of criminal jurisprudence). Haywood's first point of error is overruled.

### Point of Error Two: Disqualification of District Attorney

In Haywood's second point of error, he asserts the trial court erred by denying his motion to set aside the indictment because it was obtained by a "special prosecutor" who was disqualified along with the elected district attorney. Specifically, Haywood argues Hill was "disqualified" under article 2.07 of the code of criminal procedure because of a conflict of interest, thus requiring the district court to appoint an attorney pro tem. *See* TEX.CODE CRIM. PROC. ANN. art. 2.07 (West 2005).

#### *Standard of Review*

■ We apply a bifurcated standard of review to the trial court's determination of whether to quash or set aside an indictment. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App.2004); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We afford almost total deference to a trial court's determination of historical facts that are supported by the record, particularly when those findings are based on an evaluation of witness credibility and demeanor. *Guzman*, 955 S.W.2d at 89. When resolution of a question of law does not turn on an evaluation of credibility and demeanor, we review the issue de novo. *Moff*, 154 S.W.3d at 601.

#### *Applicable Law*

Article 2.01 of the code of criminal procedure discusses the duties of district attorneys: each district attorney "shall represent the State in all criminal cases in the district courts of his district ... except in cases where he has been, before his election, employed adversely." TEX.CODE CRIM. PROC. ANN. art. 2.01. In addition to a disqualification based on adverse employment, district attorneys are not allowed to "be of counsel adversely to the State in any case, in any court." *See id.* art. 2.08.

■ The legislature has prescribed four circumstances for judicial appointment of an attorney pro tem when the district attorney is absent or disqualified: whenever an attorney for the State (1) is disqualified to act in any case or proceeding, (2) is absent from the country or district, (3) is otherwise unable to perform the official duties, or (4) in any instance where there is no attorney for the State. *Id.* art. 2.07(a). Once appointed, the attorney pro tem "stands in the place of the regular attorney for the state and performs all the duties the state attorney would have performed under the terms of the appointment." *Coleman v. State*, 246 S.W.3d 76, 82 (Tex.Crim.App.2008).

■ In contrast to an attorney pro tem, a "special prosecutor" is an attorney who is not a part of the district attorney's office but is enlisted to assist the district attorney in a particular case. *Stephens v. State*, 978 S.W.2d 728, 731 (Tex.App.-Austin 1998, pet. ref'd); *see also State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex. Crim.App.1993) (Clinton, J., concurring). In the case of a special prosecutor, the district attorney need not be disqualified and the trial court need not approve the appointment. *Stephens*, 978 S.W.2d at 731. If the defendant seeks appointment of an attorney pro tem through the dis-

qualification of the district attorney, the defendant has the burden of establishing that disqualification is required. *Canady v. State*, 100 S.W.3d 28, 32 (Tex.App.-Waco 2002, no pet.) (citing *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex.Crim.App. 1994) (orig. proceeding) (plurality op.)).

## Analysis

 Haywood contends "Hill had a conflict which required the trial court to disqualify him, and any assistant or 'special prosecutor' working for him, from the case and appoint an attorney pro tem pursuant to article 2.07." He claims it was error for the trial court to deny his motion to set aside the indictment because the indictment was brought in Hill's name. The parties do not dispute that Hagood acted as a special prosecutor under the authority of Hill, and they argued this point of error with the phraseology of a "conflict of interest." We therefore address the question of whether Hill was disqualified based on a conflict of interest and judicial appointment of an attorney pro tem was required.

On appeal, Haywood emphasizes certain facts, some sourced from television interviews or newspaper articles, that he argues demonstrate Hill's conflict of interest rising to the level of a due-process violation: (1) Hill stated Hagood had no limits on his investigation, which could include "any other individuals you may target," and the district attorney's office would be available for questioning; (2) Hill acknowledged the investigation raised questions for the public regarding the integrity of the criminal-justice system; (3) Hill stated he chose Hagood "to avoid any appearance of a conflict"; and (4) Hill may have been involved with the drafting of two letters "praising [Hill's] handling of the fake-drug scandal" that were sent to two attorneys who were requested to sign and send them to the Dallas Morning News. Haywood argues Hill implicitly conceded this conflict when he appointed Hagood as special prosecutor with purported independence and made public statements, including the "ghost-written letters," that were attempts to "deflect blame" from the district attorney's office to the police department and Haywood. Haywood also contends Hill was disqualified by a conflict of interest because "at or near the time" the grand jury investigated Haywood with Hagood's assistance, the same grand jury also investigated Hill and members of his office, also with the assistance of Hagood.

Although typically addressing conflicts arising from violations of disciplinary rules, courts also have addressed disqualification resulting from a district attorney's conflict of interest arising from personal interest, bias, or the appearance of impropriety. *See, e.g., Fluellen v. State*, 104 S.W.3d 152, 161 (Tex.App.-Texarkana 2003, no pet.) ("prejudice or vindictiveness"); *Hanley v. State*, 921 S.W.2d 904, 909–10 (Tex.App.-Waco 1996, pet. ref'd) (appearance of impropriety, prejudice, and predisposition); *see also In re Reed*, 137 S.W.3d 676, 680 (Tex.App.-San Antonio 2004, orig. proceeding) (previous representation in civil matters). Accordingly, we apply the same analysis to the circumstances here.[1]

 A trial court may not disqualify a district attorney for a conflict of interest unless the conflict rises to the level of a

---

1. *See Ex parte Reposa*, No. AP–75965, 2009 WL 3478455, at *10 (Tex.Crim.App. Oct. 28, 2009) (orig. proceeding, not designated for publication) ("Instead, the applicant must demonstrate that an actual conflict of interest [based on personal bias or grudge against the defendant] existed which prejudiced him in such a manner as to rise to the level of a due-process violation.")

due-process violation. *See Hill,* 887 S.W.2d at 927; *see also Landers v. State,* 256 S.W.3d 295, 304 (Tex.Crim.App.2008). Mere allegations of wrongdoing will not suffice. *See State ex rel. Hilbig v. McDonald,* 877 S.W.2d 469, 471–72 (Tex.App.-San Antonio 1994, orig. proceeding). Instead, "a due-process violation occurs only when the defendant can establish 'actual prejudice,' not just the threat of possible prejudice...." *Goodman v. State,* 302 S.W.3d 462, 467 (Tex.App.-Texarkana 2009, pet. ref'd) (citing *Landers,* 256 S.W.3d at 304–05).

 Haywood essentially asserts that Hill, through his conduct and statements, acknowledged a possible conflict and the appearance of impropriety. Even if we were to assume this is true, it does not amount to the kind of due-process violation required to disqualify a prosecutor. The mere possibility of a conflict of interest is insufficient to establish disqualification. *See, e.g., Offermann v. State,* 742 S.W.2d 875, 876 (Tex.App.-San Antonio 1987, no pet.) (because defendant did not show harm, trial court did not err in declining to appoint special prosecutor on mere allegations of "grudge"); *see also State v. Terrazas,* 962 S.W.2d 38, 45 (Tex. Crim.App.1998) (Keller, J., dissenting) ("ethically questionable (and illegal)" financial scheme whereby prosecutor's office received financial award for instituting meritorious proceeding "does not render the defendant's proceedings fundamentally unfair"); *Fluellen,* 104 S.W.3d at 161 (showing of mere potential of due-process violation insufficient to permit disqualification of prosecutor). And Haywood may not sustain his burden to disqualify Hill by pointing to the appearance of impropriety. *See, e.g., Landers,* 256 S.W.3d at 310 & n. 55 (appearance of impropriety alone insufficient); *Hanley,* 921 S.W.2d at 909–10 (allegations of conflict arising to appearance of impropriety insufficient for due-process violation necessary for prosecutor disqualification).

The burden of proving disqualification based on a conflict of interest is high, and Haywood has pointed to no misconduct that resulted in actual prejudice. For example, Haywood does not suggest that he would not have been indicted had Hill (and Hagood) been disqualified or that Hill directed the investigation such that he targeted Haywood for prosecution. *See Goodman,* 302 S.W.3d at 467; *cf. Wright v. United States,* 732 F.2d 1048, 1057 (2d Cir.1984) (petitioner did not allege interested attorney was "the real instigator of the decision to proceed before a new grand jury"). He also points to no improprieties in the grand jury proceedings.

Instead, Haywood relies on a mandamus proceeding from the Corpus Christi appellate court for the proposition that a trial court has an affirmative duty to disqualify a district attorney from a grand jury's investigation into allegations the district attorney committed a crime. *See In re Guerra,* 235 S.W.3d 392 (Tex.App.-Corpus Christi 2007, orig. proceeding). *Guerra* involved the unusual circumstance of a grand jury unanimously approaching the trial court and requesting appointment of an attorney pro tem to assist the grand jury in investigating its concerns that the district attorney had abused his office. *Id.* at 399. The grand jury specifically claimed the district attorney: (1) requested the grand jury investigate and indict several elected county officials; (2) requested the grand jury subpoena the district judge; (3) requested indictments without presenting any evidence; (4) requested the grand jury form a committee to investigate and recommend indictment for several county officials; (5) demanded $10,000 from a bail bond company, and when the money was not paid, a person

was indicted for a sexual offense in retaliation; (6) requested the grand jury "true bill" a case the grand jury wanted to "no bill," stating "the suspect was going to be arrested anyway"; (7) used the grand jury process to "get even"; and (8) committed voter fraud. *Id.* at 399–400. In response, the trial judge issued an order appointing an attorney pro tem. *Id.* at 399. The district attorney was indicted and filed a petition for writ of mandamus, arguing in part that the trial court abused its discretion by appointing an attorney pro tem without his consent as the district attorney. *Id.* at 401–02. Stating the "nature of the due process concerns raised in [*State ex rel. Hill,* 887 S.W.2d 921] are inapplicable to the instant case," the court in *Guerra* relied on a Texas Supreme Court case from 1862 to conclude "there undoubtedly exist special reasons why relator should not act and why he is disqualified to act." *Id.* at 411, 414. The court determined the "appointment of an attorney pro tem was explicitly authorized by article 2.07," and it further found that the appointment "was implicitly authorized by a court's inherent power." *Id.* at 415.

Not only is the *Guerra* decision not binding on this Court, *Delamora v. State,* 128 S.W.3d 344, 359 (Tex.App.-Austin 2004, pet. ref'd), but we conclude *Guerra* is distinguishable from the circumstances presented here. The question in *Guerra* was whether "a judge [can] appoint an attorney pro tem to assist a grand jury in investigating a district attorney's conduct when the district attorney has not sought recusal[.]" *Guerra,* 235 S.W.3d at 411. Thus, *Guerra*'s language that a "judge has the authority, as well as an obligation, to appoint an attorney pro tem to assist a grand jury that intends to criminally investigate the district attorney" is necessarily tied to that specific question and the unique circumstances presented. *Id.* at 414. The court in *Guerra* emphasized the extraordinary situation in which the grand jurors collectively approached the trial judge with a desire to investigate the district attorney for alleged misconduct directly involving the grand jury process. *Id.* at 415. The court also recognized the limitations of its decision, noting: "We also observe that the grand jury apparently investigated [the district attorney] on its own initiative.... If the record regarding these circumstances reflected otherwise, we cannot say that our opinion would remain the same." *Id.*

In contrast to *Guerra*—an original proceeding under an abuse-of-discretion standard brought by a disqualified district attorney challenging the attorney-pro-tem appointment—Haywood claims a due-process violation in a direct appeal of the trial court's denial of his motion to set aside an indictment. Under Haywood's due-process challenge, he has not articulated how he has suffered actual prejudice, and he therefore has failed to sustain his burden. *See Goodman,* 302 S.W.3d at 467; *see also Wright,* 732 F.2d at 1058 (reaching question of whether prosecutor's interest in securing indictment violated due process and concluding, "[a]t the very most, and the allegations scarcely go this far, it deprived him of the chance that, with another prosecutor, he might have undeservedly escaped indictment and consequent conviction for crimes of which he was properly found to be guilty"). We therefore conclude the trial court did not err when it denied Haywood's motion to set aside the indictment. Haywood's second point of error is overruled.

**Point of Error Three: *In Pari Materia***

In his third point of error, Haywood asserts the trial court erred in denying his motion to set aside or quash the indictment alleging a violation of subsection 37.09(a)(2) of the penal code. Specifically,

Haywood argues that, because subsection 37.09(a)(2) is *in pari materia* with subsection 37.10(a),[2] due process dictates he should have been prosecuted under subsection 37.10(a).

### Applicable Law

 Under the doctrine of *in pari materia*, all laws governing or pertaining to the same subject should be construed in conjunction with one another and harmonized as a whole—none prevailing over the other—and any conflicts should be avoided. *Segura v. State*, 100 S.W.3d 652, 654 (Tex.App.-Dallas 2003, no pet.) (citing 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 3.16 (2d ed. 2002)). Texas has codified this common law doctrine in section 311.026 of the government code:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

TEX. GOV'T CODE ANN. § 311.026 (West 2005); *see also Azeez v. State*, 248 S.W.3d 182, 192 (Tex.Crim.App.2008) (noting section 311.026 codifies doctrine of *in pari materia*).

 We deem two criminal statutes to be *in pari materia* when one broadly defines an offense and the other more narrowly defines an offense, complete within itself, that proscribes conduct that meets every element of and would otherwise be punishable under the broader statute. *Azeez*, 248 S.W.3d at 192 (citing *Mills v. State*, 722 S.W.2d 411, 414 (Tex. Crim.App.1986)). Statutes that are *in pari materia* are construed together and, if possible, conflicts between them are harmonized. *Cheney v. State*, 755 S.W.2d 123, 126 (Tex.Crim.App.1988). If conflicts cannot be harmonized—as when the narrower statute provides for a lesser punishment than the broader statute—a defendant has a due-process right to be prosecuted under the narrower statute in accordance with the presumed legislative intent that the more narrow statute apply. *Mills*, 722 S.W.2d at 414.

 The two statutory provisions must have been enacted with the same purpose or object for the doctrine to apply. *Burke v. State*, 28 S.W.3d 545, 547 (Tex. Crim.App.2000); *Segura*, 100 S.W.3d at 654. Similarity of purpose or object is the most important factor in determining whether two provisions are *in pari materia*. *Burke*, 28 S.W.3d at 547; *Segura*, 100 S.W.3d at 654. To determine whether two statutes have a similar object or purpose, a court should consider whether (1) the two statutes are contained in the same legislative act; (2) the same elements of proof are required by the two statutes; (3) they involve different penalties; and (4) they obviously were designed to serve the same purpose and objective. *Segura*, 100 S.W.3d at 654 (citing *Burke*, 28 S.W.3d at 547–49).

### Analysis

 Sections 37.09 and 37.10 at issue here were contained in the same legislative

---

**2.** Haywood presented to the trial court only the argument that he should have been prosecuted under subsection 37.10(a)(1); on appeal, he argues subsection 37.10(a)(5) also would be applicable (and *in pari materia*). Because Haywood preserved error only as to subsection 37.10(a)(1), we address only that subsection. *See* TEX.R.APP. P. 33.1.

act, and both are included within chapter 37 of the penal code entitled "Perjury and Other Falsification." The two provisions also involve different penalties. Violation of subsection 37.10(a) is a Class A misdemeanor, while violation of subsection 37.09(a) is a third-degree felony. TEX. PENAL CODE ANN. §§ 37.09(c), 37.10(c)(1).

The elements of proof differ. To prove an offense under subsection 37.10(a)(1), the State must show the defendant knowingly made a false entry in, or false alteration of, a government record. *Id.* § 37.10(a)(1). In contrast, to prove an offense under subsection 37.09(a)(2), the State must prove that an actor, (1) knowing that an investigation or official proceeding is pending or in progress, (2) made, presented, or used any record, document, or thing with knowledge of its falsity and (3) with intent to affect the course or outcome of the investigation or official proceeding. *Id.* § 37.09(a)(2). Thus, the elements of subsection 37.09(a)(2) include two different mental states, knowledge and intent. *See Williams v. State,* 270 S.W.3d 140, 142 (Tex.Crim.App.2008) ("elements of section 37.09(a)(1) include two different culpable mental states—knowledge and intent") (internal quotations omitted). And, unlike subsection 37.10(a)(1), subsection 37.09(a)(2) requires the actor have knowledge that an investigation or proceeding is pending or in progress.

In addition to discrete proof requirements of sections 37.09 and 37.10, the provisions obviously were designed to serve a different purpose and objective. Section 37.09 was intended to maintain the integrity of the justice system and to prevent tampering with evidence in an official proceeding:

The purpose of section 37.09 is to maintain the honesty, integrity, and reliability of the justice system and prohibiting *anyone*—including members of the government—from creating, destroying, forging, altering, or otherwise tampering with evidence that may be used in an official investigation or judicial proceeding.... Public scandals involving police and "throw down" guns, pool-chalk wrapped to look like cocaine used as evidence to prosecute innocent people, false offense reports, and the like are not unheard of in this state. Neither police nor private individuals have a license to fabricate documents or other evidence and then use them to affect a criminal investigation or proceeding.

*Wilson v. State,* 311 S.W.3d 452, 460–61 (Tex.Crim.App.2010) (internal quotations, citations, and alterations omitted) (citing *De La Paz v. State,* 279 S.W.3d 336, 338 (Tex.Crim.App.2009) as "upholding police officer's conviction for tampering with evidence by filing a false offense report"). In contrast, section 37.10 was enacted to prevent the harm that would result from falsified governmental records. *See Alonso v. State,* No. 05–02–00534–CR, 2002 WL 31411043, at *3 (Tex.App.-Dallas Oct. 28, 2002, no pet.) (mem. op., not designated for publication) (section 37.10's "primary purpose is to prevent falsification and alteration of governmental records"); *State v. Kinkle,* 902 S.W.2d 187, 190 (Tex.App.-Houston [14th Dist.] 1995, no pet.) ("The tampering statute [section 37.10] is directed at preventing the harmful effects caused by false governmental records[.]").

The language of sections 37.09 and 37.10 also evidences the legislature's focus on distinct conduct. Section 37.09's requirement of intent to affect the outcome of investigations or proceedings focuses on the integrity of the justice system and investigations and prevention of evidence tampering. *See Wilson,* 311 S.W.3d at 463. In contrast, the language of subsection 37.10(a)(1) applies to false entries in any government record, regardless of in-

tent to manipulate an investigation or any other process, thus indicating the purpose of maintaining the integrity of the records themselves. *Cf.* TEX. PENAL CODE ANN. § 37.10(f) ("It is a defense to prosecution under Subsection (a)(1) ... that the false entry or false information could have no effect on the government's purpose for requiring the governmental record.").

Although the subjects covered by sections 37.09 and 37.10 overlap to some degree, the legislature enacted these provisions requiring different elements and involving distinct objectives. In some respects, tampering with governmental records under section 37.10 is a broader proscription than tampering with specific evidence related to an investigation or proceeding under section 37.09. The intent required for a section 37.09 violation, for example, significantly narrows the class of individuals who would be subject to prosecution. Yet tampering with any evidence under section 37.09— including a governmental record—could be considered the more inclusive penal section. *See Wilson,* 311 S.W.3d at 472 (per curiam) (op. on reh'g) (section 37.09 more inclusive than section 37.10). Because these are "broad and general statutes having different elements of proof and different purposes and objectives, neither representing a specific instance of commission of the other," they are not *in pari materia. Mills,* 722 S.W.2d at 416 (internal quotations omitted); *see Burke,* 28 S.W.3d at 547. We conclude the trial court did not err when it denied Haywood's motion to set aside the indictment. Haywood's final point of error is overruled.

## CONCLUSION

Having overruled Haywood's three points of error, we affirm the trial court's judgment.