COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EDITH GRISELDA ROMAN, | § | No. 08-11-00057-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court at Law No. Two |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100C06138) |
| | § | |

**O P I N I O N**

In nine issues, Edith Griselda Roman ("Appellant" or "Roman") appeals her conviction of the offense of harassment. She contends that: (1) a flawed police investigation violated her Due Process rights and denied her a fair trial; (2) the trial court abused its discretion by denying her pretrial motion to quash the information "due to selective/vindictive prosecution;" (3) the trial court erred by not *sua sponte* dismissing Juror Number One; (4) the trial court erred by not *sua sponte* dismissing Juror Number Sixteen; (5) the trial court erred by commenting on the weight of the evidence during voir dire "thereby tainting the presumption of innocence;" (6) the trial court erred by commenting on the weight of the evidence during Appellant's cross-examination of a witness; (7) the trial court erred when it admitted certain pieces of evidence during the trial; (8) the trial court erred by "failing to permit Appellant to effectively cross-examine" the complainant; and (9) the trial court erred by "failing to permit Appellant to effectively cross-examine Detective Laura Porter." Following a trial, the jury assessed punishment at 180 days confinement probated

for 24 months and a fine of $1,750.00.   Roman timely appealed.[1]   We affirm.

## FACTUAL BACKGROUND

Appellant was married to the complaining witness, Israel Mendoza ("Mendoza"), from 1987 – 2004.   In 2009, she commenced proceedings against Mendoza in the 388th Judicial District Court seeking sole custody of her son, an increase in the amount of child support Mendoza was obligated to pay, and an order requiring Mendoza to reimburse Appellant for certain medical expenses she had incurred on behalf of her son.   On January 16, 2010, the trial court awarded Appellant sole custody of her son, increased Mendoza's child support obligation, and ordered him to pay for certain medical bills and one-half of the invoice for orthodontic services.   On February 17, 2010, Mendoza paid Orthodontix, Ltd. $1,575.00 thereby satisfying his obligation to pay one-half of his son's orthodontic treatment costs as ordered by the court.

On February 24, 2010, Appellant called Mendoza and accused him of not paying one-half of the orthodontic bill.   Mendoza informed Appellant that he had already satisfied his orthodontic obligation at which time Appellant became upset stating that she had previously checked with Orthodontix, Ltd. who informed her that the bill had not been paid.   Mendoza again explained that he had already paid the orthodontic bill and instructed Appellant not to call him again.   Mendoza testified that he had made repeated requests of Appellant that she not contact him by phone or email and, because he was upset by Appellant's phone call, he contacted the police.

On March 2, 2010, Appellant sent Mendoza a letter via certified mail accusing Mendoza of filing a police report containing "misrepresentations of fact."   The letter was entitled Notice of Intent to Sue and, *inter alia,* it informed Mendoza that it was a tort to initiate a "malicious criminal

---

[1] Roman elected to proceed *pro se* at trial and is doing the same in this Court.

prosecution." Mendoza testified that he felt threatened by the contents of the letter.

On March 9, 2010, Appellant called Mendoza at his place of employment and again accused him of not paying his half of the orthodontic bill. Mendoza informed Appellant that he was recording the phone call, explained that he had paid the orthodontic bill, repeatedly asked Appellant not to call him again, and requested that she contact him only via certified mail. Mendoza testified that he "got tense, that I felt – I felt very harassed, I felt uncomfortable." Mendoza received additional phone calls from Appellant on March 24, 25, 26, and 30, 2010 and each time when he heard Appellant's voice, he terminated the call. Mendoza documented twenty-two phone calls during that time, and he testified that he felt annoyed, harassed and uncomfortable. He also told the jury that the phone calls from Appellant began to affect his performance at work such that his employer took notice. Mendoza's supervisor sent a letter to Appellant on April 19, 2010 advising Appellant that Mendoza's business phone was for business purposes only and that Mendoza had been instructed not to answer any phone calls from her because of the harassing, disruptive, and non-business nature of the calls. Mendoza's supervisor also testified that he was aware of at least one occasion on which Appellant appeared at the business and disrupted at least one-half of Mendoza's work day.

Appellant called Mendoza's work issued cell phone on April 21, 2010 and left a voice message complaining about the letter she had received from Mendoza's employer. Mendoza told the jury that Appellant called him at least two other times after she had received the letter from his supervisor.

Mendoza testified that he contacted the police to complain about Appellant's conduct after receiving a phone call from her on February 24, 2010. Detective Griffith was assigned the case

3

and contacted Mendoza and Appellant. Detective Porter testified that she overheard the conversation between Detective Griffith and Appellant, and heard Detective Griffith inform Appellant that there was an ongoing investigation into the complaint made by Mendoza against Appellant and that any further contact she had with Mendoza might constitute a criminal offense. Appellant responded by filing a citizen's complaint against Detective Griffith and the case was transferred to Detective Porter. Subsequently, Mendoza informed Detective Porter that Appellant was still contacting him. Detective Porter instructed Mendoza to keep a phone log and to record Appellant's calls, if possible. After reviewing the evidence obtained during the investigation, including Mendoza's sworn written statement and the phone log and recordings he had made, Detective Porter presented the case to the District Attorney's Office for further review. Detective Porter testified that she had no contact with Appellant prior to presenting the case to the District Attorney because she was aware of Detective Griffith's experience with Appellant and she had no need for additional information from Appellant.

## DISCUSSION

Preliminarily, we note that Roman represented herself *pro se* at trial, and she filed a *pro se* brief on appeal. We hold *pro se* litigants to the same standards as a licensed attorney and do not grant them any special consideration. *See Johnson v. State*, 760 S.W.2d 277, 279 (Tex.Crim.App. 1988). While we broadly construe Appellant's issues in the interest of justice, we have no duty to make an independent review of the record and applicable law to determine whether the complained-of errors occurred. *See Cavender v. State*, 42 S.W.3d 294, 296 (Tex.App.--Waco 2001, no pet.). We will not make appellant's arguments for her, nor will we address any issues that are inadequately briefed. *See* TEX.R.APP.P. 38.1(h); *Roberts v. State*, 273 S.W.3d 322, 326

4

(Tex.Crim.App. 2008)(agreeing with court of appeals that inadequately briefed complaint was properly overruled).

### Flawed Police Investigation

Appellant's first issue asserts that her conviction was illegally obtained as a result of a flawed police investigation which violated due process and denied her a fundamentally fair trial.

In determining whether an accused's due process rights under the Fourteenth Amendment have been violated as a result of the State's investigative procedures, this Court looks to the totality of circumstances. *Ex parte Brandley,* 781 S.W.2d 886, 893 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990). Improper state conduct that might give rise to a violation of due process includes but is not limited to the use of perjured testimony, the failure to correct unsolicited perjured testimony, the suppression of evidence favorable to the accused, the use of a coerced confession, and the concealment of a material witness whose testimony creates reasonable doubt. *Id.* at 891-92; *see Cook v. State,* 940 S.W.2d 623, 630 (Tex.Crim.App. 1996), *citing Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). While it is necessary to consider any misconduct by the State in analyzing a due process claim, this should only be done to ascertain the fairness of the proceedings to the accused. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 97 L.Ed.2d 215 (1963).

Roman argues that the State's investigation was incomplete and therefore improper. She contends that because her current husband was not interviewed in connection with the case and because she was never re-interviewed, Detective Porter had no knowledge of the motive or intent behind her continuous and repeated contacts with Mendoza. Roman asserts that Detective Porter's "prejudice and bias" against Roman "prevented her from contacting Appellant and

investigating her side of the story and acting as if the victim's story was all she had to go on."
Finally, Roman contends that Detective Porter should have investigated the facts further, to
establish exactly what Roman's intent was when she continued to contact Mendoza.[2]

The record is devoid of any evidence that would lead this Court to conclude that Detective
Porter harbored any bias or prejudice against Appellant or that her investigation was flawed or
improper because she elected not to contact Appellant. Detective Porter testified that she did not
have any further contact with Appellant because she did not believe that such contact would be
productive. She also thought that given Appellant's lack of cooperation with Detective Griffith,
she would not learn anything from Appellant that might be helpful to her investigation. Finally,
the evidence established that Detective Porter was aware of the on-going family court proceedings
and did not consider them particularly relevant to her investigation. The jury, as the fact finder,
was entitled to judge the credibility of the witnesses and could choose to believe all, some, or none
of the testimony presented. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).
Clearly, they performed that function here. Appellant's first issue is overruled.

### Motion to Quash

Roman next argues that the trial court abused its discretion when it denied her pretrial
motion to quash the information "due to selective/vindictive prosecution." Specifically, she
contends that she was targeted for prosecution because she previously filed a citizen complaint
against Detective Griffith and because her current husband was involved in a pending lawsuit
against the El Paso Police Department. The trial court denied the motion on November 29, 2010.

In her motion to quash, Roman argued that: (1) Detective Porter's investigation ignored

---

[2] Roman also argues that Detective Porter should have investigated the circumstances surrounding the Suit Affecting
the Parent Child Relationship between Roman and Mendoza.

"substantial exonerative evidence" thereby seeking a wrongful arrest of Appellant; (2) she was singled out for prosecution because she filed a complaint against the officer initially assigned to investigate the complaint; and (3) she was singled out for prosecution because her current husband was involved in a pending lawsuit against the El Paso Police Department. She also contends that the prosecution is vindictive because it was "instituted in retaliation of Defendant's filing of a Citizen's Complaint against Det. Griffith. . . ."

The only evidence Appellant offered to support her selective/vindictive prosecution theory was a copy of the information charging her with harassment, a copy of the Citizen Complaint Form she filed against Detective Griffith, and a track and confirm computer generated receipt from the United States Postal Service.

This Court applies a bifurcated standard of review to a trial court's determination regarding a motion to quash or set aside an information. *See Haywood v. State,* 344 S.W.3d 454, 461 (Tex.App.--Dallas 2011, pet. ref'd). We give almost total deference to the trial court's determination of historical facts found in the record, particularly those that are based on an evaluation of a witnesses credibility and demeanor. *Id.* However, when the determination does not turn on an evaluation of credibility or demeanor, our review is *de novo. Id.*

In order to make a *prima facie* showing that she was selected or targeted for prosecution, Roman must establish that: (1) although others similarly situated have not generally been prosecuted as a result of the conduct of the type forming the basis of the case against her, she has been singled out for prosecution; and (2) the State's selection of her for prosecution was invidious or in bad faith. *See Garcia v. State,* 172 S.W.3d 270, 273-74 (Tex.App.--El Paso 2005, no pet.). There is a presumption that a prosecution for a violation of the criminal laws is undertaken in good

7

faith and in a non-discriminatory fashion so as to fulfill the duty to bring violators to justice. *Id.* at 274. An appellant must come forward with "exceptionally clear" evidence that her prosecution was initiated for an improper reason. *Id.*

At the hearing on her motion to quash, Roman presented no evidence other than that attached to the motion itself. Absent any evidence of an improper motive, Roman is unable to establish even a *prima facie* case for selective prosecution. *Id.* at 274; *see also Matney v. State*, 99 S.W.3d 626, 628 (Tex.App.--Houston [1st Dist.] 2002, no pet.).[3]

A claim of prosecutorial vindictiveness may be established by: (1) proof of circumstances that pose a realistic likelihood of misconduct sufficient to raise a presumption of prosecutorial vindictiveness which the state is obligated to rebut or face dismissal of the charges; or (2) proof of actual vindictiveness. *Neal v. State*, 150 S.W.3d 169, 173 (Tex.Crim.App. 2004). Evidence of actual vindictiveness must show, through objective evidence, that the prosecutor's decision to charge the defendant was a direct and unjustifiable penalty that resulted from her exercise of a protected legal right. *Id.* at 174. If a defendant cannot establish the actual vindictiveness prong, the court need not address the first prong. *Id.* at 175. The allegations and conclusions offered by Roman in her motion and during the hearing simply do not rise to the level of proof required to show actual vindictiveness. Appellant's second issue is overruled.

## Failure to Dismiss Jurors

In her third and fourth issues, Appellant contends that the trial court erred by not *sua sponte* dismissing Jurors One and Sixteen.

During *voir dire*, Juror Number One informed the trial court that he had previously been

---

[3] In light of our conclusion that Roman failed to establish a *prima facie* case for selective prosecution, it is clear that the trial court did not err when it denied Roman's motion for continuance and order for discovery.

involved in a divorce proceeding and that he had represented himself *pro se*. At the bench, when he was asked whether his past experiences would prevent him from sitting as a juror, he responded equivocally stating "it would depend on the situation" and that it was "hard to say" whether he could put aside his personal experiences and make a decision based on the evidence admitted during the trial inasmuch as he thought of himself as a victim of a "woman scorned." Appellant did not challenge Juror Number One for cause nor did she use a peremptory strike to remove him from the panel.

The State requested that Juror Number Sixteen be brought to the bench for further individual *voir dire* regarding the nature of her employment with a company that provides litigation support to the legal community. Appellant questioned Juror Number Sixteen about how many people she supervised, how long she had been with the company, whether she had always held the same position in the company, whether she had children, and what position her husband, who worked at the same company, held. Appellant did not challenge Juror Number Sixteen for cause, nor did she use a peremptory strike to remove Juror Number Sixteen from the panel. Both Juror Number One and Juror Number Sixteen were seated as jurors.

A prospective juror is disqualified from serving on a jury and must be excused from the panel if the prospective juror has been convicted of a felony, is under indictment or other legal accusation for theft or any felony, or is insane. *See* TEX.CODE CRIM.PROC.ANN. art. 35.16(a) (West 2006); *Warren v. State,* 768 S.W.2d 300, 303 (Tex.Crim.App. 1989). A trial court must excuse a prospective juror who is disqualified for the reasons set forth above. *Id.* However, if a prospective juror is not disqualified under Article 35.16(a) of the Texas Code of Criminal Procedure, a trial court has no authority to *sua sponte* excuse the juror. *Warren*, 768 S.W.2d at

9

303.

There is no evidence in the record that either Juror Number One or Juror Number Sixteen was disqualified from serving as a juror under Article 35.16(a) of the Texas Code of Criminal Procedure. As a result, the trial court had no authority to unilaterally excuse these prospective jurors.

Next, in order to preserve error with respect to a trial court's erroneous denial of a challenge for cause, Appellant must establish that: (1) she asserted a clear and specific challenge for cause; (2) she used a peremptory challenge to remove that specific juror about whom she had complained; (3) her peremptory challenges were exhausted; (4) she made a request for additional strikes which was denied; and (5) the objectionable juror was seated on the jury. *Davis v. State,* 329 S.W.3d 798, 807 (Tex.Crim.App. 2010).

Here, Appellant did not challenge either Juror Number One or Juror Number Sixteen for cause. The record reflects that Appellant used her peremptory strikes to remove other venire members from the panel but did not use any of her peremptory strikes on Juror Numbers One or Sixteen. Given that Appellant failed to preserve these issues for our review, her arguments could be overruled on this basis alone.

However, broadly construing Appellant's issues in the interest of justice, *see Cavender*, 42 S.W.3d at 296, and assuming she had asserted a challenge for cause against each of the complained of jurors, her arguments would still fail.

We review the denial of a challenge for cause by looking to the entire record to determine whether there is sufficient evidence to support the ruling. *See Davis,* 329 S.W.3d at 807. The question is whether the jurors' bias or prejudice would substantially impair their ability to carry out

10

their oath and follow the court's instructions on the law. *Id.* Before the trial court may excuse the juror for cause, the trial court must explain the law to them and inquire of them whether they can follow the law notwithstanding their personal views. *Id.* We give considerable deference to the trial court's ruling because that court is in the best position to evaluate the venireperson's demeanor and responses. *Id.* If the juror's answers are vacillating, unclear or contradictory, we will only reverse the trial court where there has been a clear abuse of discretion. *Id.*

A review of the entire record establishes that the trial court would not have been in error had it denied a challenge for cause against Juror Numbers One and Sixteen. While Juror Number One's answers might be viewed as equivocal, there is no evidence in the record of a bias or prejudice so strong in favor of one party that he would base his verdict on those feelings rather than the evidence. *See Mount v. State,* 217 S.W.3d 716, 722-23 (Tex.App.--Houston [14th Dist.] 2007, no pet.). With respect to Juror Number Sixteen, the record is completely devoid of any evidence that might establish that Juror Number Sixteen was biased or prejudiced either for or against any party. *Id.* Other than the allegations made in Appellant's Brief, there is simply nothing on which this Court might make any determination regarding Juror Number Sixteen. *See McDonald v. State,* 64 S.W.3d 86, 89 (Tex.App.--Austin 2001, no pet.). In other words, the trial court did not err by failing to *sua sponte* excuse Juror Number One and/or Juror Number Sixteen.

Issues Three and Four are overruled.

**Comments on the Weight of the Evidence**

Appellant's fifth and sixth issues argue that the trial court erred by commenting on the weight of the evidence once during *voir dire* and again during the cross-examination of a witness.

During *voir dire,* the trial court instructed the jury that in Texas a criminal case proceeds in

two phases, and that they would only reach the second phase "if and only if" the jury found the defendant guilty during the first phase of the trial. Near the conclusion of the State's *voir dire*, one of the members of the venire asked about the possibility of community service versus jail and a fine as potential punishments should Roman be convicted of the offense of harassment. This occurred during an exchange between the trial court and the prosecutor about whether the State was going to question the panel about "stage two" of the proceedings. Following the question from the venire person, the trial court stated "[t]hose are the factors you needed to get into, Mr. Moody, that's why I told you." The State then commenced a discussion with the venire panel about the punishment range Roman would face if the jury convicted her of the offense charged in the information.

Appellant contends that the comments made by the trial court essentially "tainted Appellant's presumption of innocence" because the venire panel heard the judge tell the prosecutor that he might "want to talk about stage two."

In order to preserve a complaint for appellate review, a defendant must make a timely, specific objection to the trial court. *Peavey v. State,* 248 S.W.3d 455, 470 (Tex.App.--Austin 2008, pet. ref'd). This requirement holds true for improper comments by the trial court. *Id.* Here, Appellant did not object or complain in any way about the trial court's comments at the time they were made. However, Roman argues that she was not required to object to the trial court's comments because those comments constituted fundamental error. The Court of Criminal Appeals has held that a trial court's comments might, in some cases, taint the presumption of innocence, and such error would be fundamental requiring no objection. *See Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App. 2000)(plurality op.)(trial court apologized to venire panel for

12

long delay and attributed delay to defendant's inability to decide whether to accept a plea bargain and expressed court's desire that defendant plead guilty).

In this case, the trial court's comments are not comparable to the comments made by the trial court in *Blue*. Here, the trial court was simply attempting to ensure that the venire panel would be able to consider the full range of punishment, including community service. A juror must be able to consider the full range of punishment. *See Standefer v. State,* 59 S.W.3d 177, 181 (Tex.Crim.App. 2001). Neither the trial court's comments nor those subsequently made by the State constituted a comment on the weight of the evidence sufficient to taint the presumption of innocence. The trial court's comments were not error, let alone fundamental error.

In Issue Six, Roman asserts that the trial court erred by commenting on the weight of the evidence during her cross-examination of Mendoza. Specifically, Appellant refers us to the following exchange:

> [Roman]: Okay. Did you claim to the police officers that you should -- that there was communication only to be through certified mail? Did you claim that to the police officers?
>
> [Mendoza]: Yes. We went through that at the 388th Court with Judge Macias.
>
> [Roman]: Objection. He is testifying to -- to the Court order, but --
>
> [Trial Court]: I think he has to. I think he testified from that question.
>
> [Roman]: Okay.

Roman contends that the trial court's comment, outlined above, indicated the court's disbelief of Roman's position that Mendoza had provided false information to the police, thereby "diminishing the credibility of the defense's approach to the case."

Again, in order to preserve a complaint for appellate review, a defendant must make a

timely, specific objection to the trial court. *Peavey,* 248 S.W.3d at 470. This requirement holds true for improper comments by the trial court. *Id.* Here, Appellant did not object or complain in any way about the trial court's comment at the time it was made. Her objection related to Mendoza's response to Appellant's question. Because Appellant failed to make a timely, specific objection to the trial court's comment, she failed to preserve this issue for our review and her argument could be overruled on this basis alone. However, broadly construing Appellant's issues in the interest of justice, *see Cavender*, 42 S.W.3d at 296, and assuming she had objected to the trial court's comment, her argument would still fail.

A trial judge shall not make any remark calculated to convey to the jury the judge's opinion of the case. *Hoang v. State,* 997 S.W.2d 678, 680 (Tex.App.--Texarkana 1999, no writ)(citing TEX.CODE CRIM.PROC.ANN. art. 38.05). A trial court's comments are improper if the court makes a statement that implies approval of the state's argument or that indicates any disbelief in the defense's position or that diminishes the credibility of the defense in its approach to the case. *Id.*

Here, the trial court was apparently attempting to explain to Roman why the witness' answer was proper. Indeed, the witness answered Roman's question directly by responding "[y]es." The witness then went on to clarify his answer. When Roman objected, the trial court tried to explain its ruling (which was not ultimately, forthcoming) to her. The record does not support Roman's contention that the trial court made an inappropriate comment on the weight of the evidence. The trial court's comment did not in any way indicate either its approval of the State's argument or diminish the credibility of the defense's approach to the case. *See Hoang,* 997 S.W.2d at 680. Accordingly, Appellant's fifth and sixth issues are overruled.

14

**Admission of Hearsay Evidence**

In her seventh issue, Roman complains that the trial court erred by admitting State's Exhibit's 1, 2, and 3 over her hearsay objections and that those Exhibits "reasonably influenced the jury's verdict." State's Exhibits 1, 2, and 3 were a letter and receipts from Orthodontix, Ltd. showing Mendoza's payment of $1,575.00. Roman initially objected to the admission of these three Exhibits arguing that they had not been authenticated properly. Mendoza testified that he recognized each of the Exhibits because he received them from Orthodontix, Ltd. at the time that he made payment. When Mendoza was asked if the Exhibits had been altered in any way, Roman again objected asserting that "they are not his signature, they are not made by him, and we don't know where these came from." In essence, this was a hearsay objection which was sustained by the trial court.

Subsequent to Mendoza's testimony that he received all three exhibits from an Orthodontix, Ltd. employee when his credit card was charged, the State offered the Exhibits as evidence. Roman objected on authentication grounds as to Exhibit 1 and hearsay, lack of authentication and that the document was a copy as to Exhibit 3. She made no specific objection to Exhibit 2. The trial court reserved its ruling on Roman's objections subject to her cross-examination of Mendoza. Following that exchange, Mendoza testified again that he received Exhibits 1, 2, and 3 from Orthodontix, Ltd. at the time that the documents were created, that he kept copies of them, and that they were a part of his personal records. Roman's position throughout the trial was that Mendoza had failed to pay his half of the Orthodontix, Ltd. bill and, as a result, she was required to contact him to ensure that he honored his financial obligations to their son. The State again offered State's Exhibits 1, 2, and 3 and the trial court stated: "Well, I guess

since folks have been going back and forth, all I am going to do for the limited purpose of the State's Exhibit 1, 2 and 3, are not really for the truth of anything." The State argued that the Exhibits were not hearsay and were being offered as a prior consistent statement under Texas Rule of Evidence 801(e)(1)(B). The trial court then stated "under that consideration, and only so the jury is aware of that, since there's been, I guess, this back and forth on these -- on this particular bill, so for that purpose and that purpose only, the Court is admitting (e) -- I mean, State's Exhibits 1, 2, and 3."

A trial court's admission or exclusion of evidence is reviewed for an abuse of discretion. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). We will not reverse a trial court's evidentiary determination unless that determination falls outside of the zone of reasonable disagreement. *Id.* A trial court's ruling will be upheld as long as it is correct on any theory of law applicable to the case. *Santellan v. State,* 939 S.W.2d 155, 167 n.19 (Tex.Crim.App. 1997). Evidence that is otherwise inadmissible may become admissible if a party "opens the door" to such evidence. *Williams v. State,* 301 S.W.3d 675, 687 (Tex.Crim.App. 2009), *cert. denied,* ___ U.S. ___, 130 S.Ct. 3411, 177 L.Ed.2d 326 (2010). Moreover, the erroneous admission of evidence is generally non-constitutional error where the trial court's ruling merely offends the rules of evidence. *See* TEX.R.APP.P. 44.2(b); *Melgar v. State,* 236 S.W.3d 302, 308 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd). Non-constitutional error is that which does not affect substantial rights and is therefore disregarded on appeal. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App. 2002). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the trial court's error did not influence the jury or had only a slight effect. *Motilla*, 78 S.W.3d at 355. In

16

assessing the likelihood that the jury's decision was adversely affected by the trial court's error, we consider everything in the record, including any testimony or other evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with the other evidence in the case. *Id.* We also consider jury instructions, the theories argued by the State and the defense, closing arguments, *voir dire* and whether the State emphasized the error. *Id.* at 355-56.

Our review of the record establishes that Roman repeatedly and consistently contended, throughout the trial, that Mendoza failed to pay his half of the Orthodontix, Ltd. bill. This left the jury with a false impression and opened the door to the admission of State's Exhibits 1, 2, and 3 to correct that false impression. *See Houston v. State,* 208 S.W.3d 585, 591 (Tex.App.--Austin 2006, no pet.)(defense counsel's cross-examination of a state's witness that leaves a false impression as to some fact may open the door to admission of otherwise inadmissible evidence to correct the false impression). Further, even if the trial court gave an incorrect reason for its decision, and we do not so find, State's Exhibits 1, 2, and 3 were admissible under other theories of law applicable to this case, i.e. Rule 107 of the Texas Rules of Evidence.[4] Finally, after having examined the record as a whole, we are convinced that the admission of State's Exhibits 1, 2, and 3 did not influence the jury's verdict in this case. Appellant's seventh issue is overruled.

### Limitation of Cross-Examination

In Issues Eight and Nine, Roman argues that the trial court erred by not permitting her to effectively cross-examine the complaining witness and Detective Laura Porter.

Appellant complains of three instances during the course of the trial where the trial court limited her cross-examination of the complaining witness and one instance where the trial court

---

[4] The Rule of Optional Completeness.

17

limited her cross-examination of Detective Porter.   Each is set out below.

[Roman]:   And can you elaborate to the Court and to the jury what that means, the parent/child relationship, how it was affected?

[Mendoza]:   It was affected by you requesting sole custody of our son, increase in child support and payment of back medical bills.

[Roman]:   Okay.   And the sole custodian -- custody of the child was granted, correct?

[Mendoza]:   It was granted.

[Roman]:   Was it fought or did you just give up?

[State]:   Objection, relevance.

[Court]:   Sustained.

[Roman]:   It just goes to motive.

[State]:   Sorry.   Motive as to what, Judge?

[Court]:   Well, that's why I'm sustaining.

[Roman]:   Okay.

[Court]:   You build your foundation you [sic] feel.   Sustained.

.          .          .

[Roman]:   But, did you communicate to the police officers that you -- that there was -- communication should only be done through certified mail, correct?

[Mendoza]:   Yes.

[Roman]:   Okay.   The fact is, there is no court order.   So it was your word to the police officers that, one, that we're getting a divorce; two, that you had already paid the orthodontics bill even though you had not told anyone else; three that the report says that you should only communicate through certified mail.

[Mendoza]:   I asked for that in open court through Judge Macias.

18

[Roman]:   Okay.

[Mendoza]:   I even pinpointed you and your husband and I said, Judge, please have them to not contact me anymore by e-mail nor telephone.

[Roman]:   Well, unfortunately Judge Macias isn't here to say that that's actually true. I mean, you could say that, but, you know, there is no evidence to that.

[State]:   I'm going to object, Judge. Again, she can ask questions --

[Court]:   Let's get a question in pursuant to the Rules.

[Roman]:   Well, if we can -- I'd like to introduce again the -- the modifications, because there is no -- there is no request for certified mail.

[State]:   That's not relevant to the instant case, Judge.

[Court]:   Well, I'll sustain that objection.

[Roman]:   It's relevant, Your Honor, because if it wasn't certified mail, how were we supposed to contact each other?

[Court]:   I don't understand your question.

[Roman]:   Okay.

.          .          .

[Roman]:   Before this parent/child modification, had you ever pressed charges for harassment on me or anybody else?

[State]:   Objection, relevance.

[Court]:   What is the relevance here?

[Roman]:   Well, he's saying that for 25 years, it's been a horrendous interaction, so, I mean --

[Court]:   I'm going to decide this case, and that's what they are going to decide.

[Roman]:   Okay.

[Court]:   Your all's 25-year marriage, they're not going to decide that one.

19

[Roman]:   It wasn't 25 years, sir.

[Court]:   Whatever it was.   Let's proceed.

[Roman]:   Okay.

[State]:   What was the ruling?

[Court]:   That is sustained.


.          .          .


[Roman]:   Did you ever contact the suspect or the co-defendant?

[Porter]:   I know that Detective Griffith did and after the interaction she had with the -- with you, I did not contact you further, no.

[Roman]:   Did you contact the co-defendant?

[Porter]:   No.

[Roman]:   Are you aware that the co-defendant has a lawsuit against the City of El Paso?

[State]:   Objection, Your Honor, relevance.

[Court]:   Sustained.   Sustained.

[Roman]:   Sustained?   Okay.   Do you have any reason to believe that the co-defendant is uncooperative?

[State]:   Objection, Your Honor, relevance.

[Court]:   Sustained.

[Roman]:   Was the co-defendant --

[State]:   Objection, Your Honor --

[Court]:   Sustained.

[State]:   -- relevance.

20

[Court]:   We're not getting into anything other than this case.

[State]:   And, Judge, I'd ask you to instruct the defendant to not refer –

[Court]:   Ladies and gentlemen of this jury, you will not consider anything about any other case other than what is here before you.   So that's what you will restrict your deliberations thereto.

In each of the instances noted above, the State asserted a relevance objection which was sustained by the trial court.   On appeal, Roman argues that by sustaining the State's objections, the trial court was inappropriately limiting her right to cross-examine the witnesses.   She now claims that had she been permitted to fully cross-examine the witnesses on the issues outlined above, she would have been able to establish that they were biased or prejudiced against her and that Mendoza's testimony was false.   The State counters that Roman failed to preserve these issues for our review because she did not make timely, specific objections at trial that the trial court was limiting her cross-examination of the witnesses.

In order to preserve a complaint for review, a party must make a timely request, objection or motion to the trial court which sets forth the grounds for the ruling requested, if those grounds are not apparent from the context of the request, objection, or motion.   *Robinson v. State,* 310 S.W.3d 574, 577 (Tex.App.--Fort Worth 2010, no pet.).   When a trial court excludes evidence, the party is obligated to make an offer of proof to the trial court explaining the substance of the excluded evidence or testimony.   *Guidry v. State,* 9 S.W.3d 133, 153 (Tex.Crim.App. 1999). Here, there is no evidence in the record that Roman ever objected or complained in any way to the trial court that her cross-examination of the witness was being limited nor did she make any offer of proof regarding the excluded testimony.   On the other hand, Roman did attempt to argue the relevance of the testimony she was attempting to elicit following the trial court's ruling in each of

21

the instances above. Again, in light of Appellant's *pro se* status, and broadly construing Appellant's issues in the interest of justice, *see Cavender*, 42 S.W.3d at 296, we conclude, relative only to the facts of this case, that Roman sufficiently preserved these two issues for our review.

We review a trial court's limitation of cross-examination of a witness for an abuse of discretion. *Walker v. State,* 300 S.W.3d 836, 843 (Tex.App.--Fort Worth 2009, pet. ref'd). A trial court abuses its discretion if it acts without reference to any rules or guiding principles. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court abuses its discretion if its ruling goes beyond the zone of reasonable disagreement. *Walker*, 300 S.W.3d at 844.

While a defendant has a constitutional right to cross-examine a witness, the trial court maintains broad discretion to impose reasonable limits on that cross-examination. *See Lopez v. State,* 18 S.W.3d 220, 222 (Tex.Crim.App. 2000). Defendants are generally entitled to cross-examine a witness by inquiring into any area which is reasonably calculated to show a witness's motive, bias or interest in testifying. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). However, the extent to which a defendant might cross-examine a witness to establish bias rests within the sound discretion of the trial court.[5] *Ramirez v. State,* 976 S.W.2d 219, 223 (Tex.App.--El Paso 1998, pet. ref'd).

In each of the instances about which Roman complains on appeal, the trial court properly sustained relevance objections. Whether Mendoza elected to contest sole custody of his son

---

[5] We also note that a defendant does not have an absolute constitutional right to impeach the general credibility of a witness in any fashion she chooses. *See Hammer v. State,* 296 S.W.3d 555, 562 (Tex.Crim.App. 2009). While the Confrontation Clause guarantees an opportunity for effective cross-examination, trial courts have the discretion to limit cross-examination as inappropriate for a number of reasons including the prevention of harassment, prejudice and marginally relevant interrogation. *Carpenter v. State,* 979 S.W.2d 633, 634 (Tex.Crim.App. 1998), *citing Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Smith v. State,* 352 S.W.3d 55, 64 (Tex.App.--Fort Worth 2011, no pet.).

being awarded to Roman was not relevant to whether Roman committed the charged offense in this case. Whether the modification order entered by another court in another case established the manner of communication between Mendoza and Roman was not relevant as to whether Roman committed the charged offense in this case. Whether Mendoza had ever filed a harassment complaint against any other person was not relevant to whether Roman committed the charged offense in this case. Finally, the actions of a co-defendant, not on trial, including whether he may have sued the City of El Paso, were not relevant to whether Roman committed the offense charged in this case.

The record is replete with instances where the trial court permitted Roman to inquire into multiple other relevant areas during her cross-examination of Mendoza and Detective Porter which could have established their respective bias or motive or interest in testifying. *See Carroll,* 916 S.W.2d at 497. Obviously, the jury elected to believe the witness testimony as it was entitled to do. *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000)("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."). We perceive no abuse of discretion on the part of the trial court in sustaining the relevance objections as outlined above, nor do we find that the trial court inappropriately limited Roman's cross-examination of Mendoza or Detective Porter. Appellant's Eighth and Ninth Issues are overruled.

### Conclusion

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.


October 24, 2012

CHRISTOPHER ANCLIFF, Justice

23

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)