COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 EDITH GRISELDA ROMAN,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   §
     
   §
     
   §
     
   §
     
   §
     
  §
  
 
 
  
  
                   No. 08-11-00057-CR
  
 Appeal from the
  
 County
 Criminal Court at Law No. Two
  
 of El
 Paso County, Texas 
  
 (TC# 20100C06138) 
  
 
 


 

                                                                  O
P I N I O N

In nine issues, Edith Griselda Roman
(“Appellant” or “Roman”) appeals her conviction of 

the offense of harassment. 
She contends that:  (1) a flawed
police investigation violated her Due Process rights and denied her a fair
trial; (2) the trial court abused its discretion by denying her pretrial motion
to quash the information “due to selective/vindictive prosecution;” (3) the
trial court erred by not sua sponte dismissing
Juror Number One; (4) the trial court erred by not sua sponte dismissing Juror Number Sixteen; (5) the trial court
erred by commenting on the weight of the evidence during voir dire “thereby
tainting the presumption of innocence;” (6) the trial court erred by commenting
on the weight of the evidence during Appellant’s cross-examination of a
witness; (7) the trial court erred when it admitted certain pieces of evidence
during the trial; (8) the trial court erred by “failing to permit Appellant to
effectively cross-examine” the complainant; and (9) the trial court erred by
“failing to permit Appellant to effectively cross-examine Detective Laura
Porter.”  Following a trial, the jury
assessed punishment at 180 days confinement probated for 24 months and a fine
of $1,750.00.  Roman timely appealed.[1]
 We affirm.

FACTUAL
BACKGROUND

Appellant was
married to the complaining witness, Israel Mendoza (“Mendoza”), from 1987 –
2004.  In 2009, she commenced proceedings
against Mendoza in the 388th Judicial District Court seeking sole custody of
her son, an increase in the amount of child support Mendoza was obligated to
pay, and an order requiring Mendoza to reimburse Appellant for certain medical
expenses she had incurred on behalf of her son. 
On January 16, 2010, the trial court awarded Appellant sole custody of
her son, increased Mendoza’s child support obligation, and ordered him to pay
for certain medical bills and one-half of the invoice for orthodontic services.
 On February 17, 2010, Mendoza paid
Orthodontix, Ltd. $1,575.00 thereby satisfying his obligation to pay one-half
of his son’s orthodontic treatment costs as ordered by the court.

            On
February 24, 2010, Appellant called Mendoza and accused him of not paying
one-half of the orthodontic bill. 
Mendoza informed Appellant that he had already satisfied his orthodontic
obligation at which time Appellant became upset stating that she had previously
checked with Orthodontix, Ltd. who informed her that the bill had not been
paid.  Mendoza again explained that he
had already paid the orthodontic bill and instructed Appellant not to call him
again.  Mendoza testified that he had
made repeated requests of Appellant that she not contact him by phone or email
and, because he was upset by Appellant’s phone call, he contacted the police.

            On
March 2, 2010, Appellant sent Mendoza a letter via certified mail accusing
Mendoza of filing a police report containing “misrepresentations of fact.”  The letter was entitled Notice of Intent to
Sue and, inter alia, it informed
Mendoza that it was a tort to initiate a “malicious criminal prosecution.”  Mendoza testified that he felt threatened by
the contents of the letter.

            On
March 9, 2010, Appellant called Mendoza at his place of employment and again
accused him of not paying his half of the orthodontic bill.  Mendoza informed Appellant that he was
recording the phone call, explained that he had paid the orthodontic bill, repeatedly
asked Appellant not to call him again, and requested that she contact him only
via certified mail.  Mendoza testified
that he “got tense, that I felt – I felt very harassed, I felt uncomfortable.”  Mendoza received additional phone calls from
Appellant on March 24, 25, 26, and 30, 2010 and each time when he heard
Appellant’s voice, he terminated the call. 
Mendoza documented twenty-two phone calls during that time, and he
testified that he felt annoyed, harassed and uncomfortable.  He also told the jury that the phone calls
from Appellant began to affect his performance at work such that his employer
took notice.  Mendoza’s supervisor sent a
letter to Appellant on April 19, 2010 advising Appellant that Mendoza’s
business phone was for business purposes only and that Mendoza had been
instructed not to answer any phone calls from her because of the harassing,
disruptive, and non-business nature of the calls.  Mendoza’s supervisor also testified that he
was aware of at least one occasion on which Appellant appeared at the business
and disrupted at least one-half of Mendoza’s work day.

            Appellant
called Mendoza’s work issued cell phone on April 21, 2010 and left a voice
message complaining about the letter she had received from Mendoza’s employer.  Mendoza told the jury that Appellant called
him at least two other times after she had received the letter from his
supervisor.

            Mendoza
testified that he contacted the police to complain about Appellant’s conduct
after receiving a phone call from her on February 24, 2010.  Detective Griffith was assigned the case and
contacted Mendoza and Appellant. 
Detective Porter testified that she overheard the conversation between
Detective Griffith and Appellant, and heard Detective Griffith inform Appellant
that there was an ongoing investigation into the complaint made by Mendoza
against Appellant and that any further contact she had with Mendoza might
constitute a criminal offense.  Appellant
responded by filing a citizen’s complaint against Detective Griffith and the
case was transferred to Detective Porter. 
Subsequently, Mendoza informed Detective Porter that Appellant was still
contacting him.  Detective Porter
instructed Mendoza to keep a phone log and to record Appellant’s calls, if
possible.  After reviewing the evidence
obtained during the investigation, including Mendoza’s sworn written statement
and the phone log and recordings he had made, Detective Porter presented the
case to the District Attorney’s Office for further review.  Detective Porter testified that she had no
contact with Appellant prior to presenting the case to the District Attorney
because she was aware of Detective Griffith’s experience with Appellant and she
had no need for additional information from Appellant.

DISCUSSION

Preliminarily, we
note that Roman represented herself pro
se at trial, and she filed a pro se
brief on appeal.  We hold pro se litigants to the same standards
as a licensed attorney and do not grant them any special consideration.  See Johnson
v. State, 760 S.W.2d 277, 279 (Tex.Crim.App. 1988).  While we broadly construe Appellant’s issues
in the interest of justice, we have no duty to make an independent review of
the record and applicable law to determine whether the complained-of errors occurred.
 See
Cavender v. State, 42 S.W.3d 294, 296 (Tex.App.--Waco 2001, no pet.).  We will not make appellant’s arguments for her,
nor will we address any issues that are inadequately briefed.  See Tex.R.App.P. 38.1(h); Roberts v. State, 273 S.W.3d 322, 326
(Tex.Crim.App. 2008)(agreeing with court of appeals that inadequately briefed
complaint was properly overruled).

Flawed Police Investigation

Appellant’s first
issue asserts that her conviction was illegally obtained as a result of a
flawed police investigation which violated due process and denied her a
fundamentally fair trial.

In determining
whether an accused’s due process rights under the Fourteenth Amendment have
been violated as a result of the State’s investigative procedures, this Court looks to the totality of
circumstances.  Ex parte Brandley, 781 S.W.2d 886, 893 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 817, 111 S.Ct. 61, 112
L.Ed.2d 35 (1990).  Improper state conduct that might give rise to a
violation of due process includes but is not limited to the use of perjured
testimony, the failure to correct unsolicited perjured testimony, the
suppression of evidence favorable to the accused, the use of a coerced
confession, and the concealment of a material witness whose testimony creates
reasonable doubt.  Id. at 891-92; see Cook v.
State, 940 S.W.2d
623, 630 (Tex.Crim.App. 1996), citing
Foster v.
California, 394 U.S. 440,
89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).  While it is necessary to consider any
misconduct by the State in analyzing a due process claim, this should only be
done to ascertain the fairness of the proceedings to the accused.  See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 97 L.Ed.2d 215
(1963).

Roman argues that the State’s investigation was incomplete
and therefore improper.  She contends
that because her current husband was not interviewed in connection with the
case and because she was never re-interviewed, Detective Porter had no
knowledge of the motive or intent behind her continuous and repeated contacts
with Mendoza.  Roman asserts that
Detective Porter’s “prejudice and bias” against Roman “prevented her from
contacting Appellant and investigating her side of the story and acting as if
the victim’s story was all she had to go on.”  Finally, Roman contends that Detective Porter
should have investigated the facts further, to establish exactly what Roman’s
intent was when she continued to contact Mendoza.[2]

The record is devoid of any evidence that would lead this Court
to conclude that Detective Porter harbored any bias or prejudice against
Appellant or that her investigation was flawed or improper because she elected
not to contact Appellant.  Detective
Porter testified that she did not have any further contact with Appellant
because she did not believe that such contact would be productive.  She also thought that given Appellant’s lack
of cooperation with Detective Griffith, she would not learn anything from
Appellant that might be helpful to her investigation.  Finally, the evidence established that
Detective Porter was aware of the on-going family court proceedings and did not
consider them particularly relevant to her investigation.  The jury, as the fact finder, was entitled to
judge the credibility of the witnesses and could choose to believe all, some,
or none of the testimony presented.  See Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).
 Clearly, they performed that function
here.  Appellant’s first issue is
overruled.

Motion to Quash

            Roman next argues that the trial
court abused its discretion when it denied her pretrial motion to quash the
information “due to selective/vindictive prosecution.”  Specifically, she contends that she was
targeted for prosecution because she previously filed a citizen complaint
against Detective Griffith and because her current husband was involved in a
pending lawsuit against the El Paso Police Department.  The trial court denied the motion on November
29, 2010.

            In her motion to quash, Roman argued
that:  (1) Detective Porter’s
investigation ignored “substantial exonerative evidence” thereby seeking a
wrongful arrest of Appellant; (2) she was singled out for prosecution because
she filed a complaint against the officer initially assigned to investigate the
complaint; and (3) she was singled out for prosecution because her current
husband was involved in a pending lawsuit against the El Paso Police Department.  She also contends that the prosecution is
vindictive because it was “instituted in retaliation of Defendant’s filing of a
Citizen’s Complaint against Det. Griffith. . . .”

            The only evidence Appellant offered
to support her selective/vindictive prosecution theory was a copy of the
information charging her with harassment, a copy of the Citizen Complaint Form
she filed against Detective Griffith, and a track and confirm computer
generated receipt from the United States Postal Service.

            This Court applies a bifurcated
standard of review to a trial court’s determination regarding a motion to quash
or set aside an information.  See Haywood v. State, 344 S.W.3d 454,
461 (Tex.App.--Dallas 2011, pet. ref’d).  We give almost total deference to the trial
court’s determination of historical facts found in the record, particularly
those that are based on an evaluation of a witnesses credibility and demeanor.  Id.  However, when the determination does not
turn on an evaluation of credibility or demeanor, our review is de novo. 
Id.

            In order to make a prima facie showing that she was
selected or targeted for prosecution, Roman must establish that:  (1) although others similarly situated have
not generally been prosecuted as a result of the conduct of the type forming
the basis of the case against her, she has been singled out for prosecution;
and (2) the State’s selection of her for prosecution was invidious or in bad
faith.  See Garcia v. State, 172 S.W.3d 270, 273-74 (Tex.App.--El Paso
2005, no pet.).  There is a presumption
that a prosecution for a violation of the criminal laws is undertaken in good
faith and in a non-discriminatory fashion so as to fulfill the duty to bring
violators to justice.  Id. at 274.  An appellant must come forward with
“exceptionally clear” evidence that her prosecution was initiated for an
improper reason.  Id.

            At the hearing on her motion to
quash, Roman presented no evidence other than that attached to the motion
itself.  Absent any evidence of an
improper motive, Roman is unable to establish even a prima facie case for selective prosecution.  Id. at
274; see also Matney v. State, 99
S.W.3d 626, 628 (Tex.App.--Houston [1st Dist.] 2002, no pet.).[3]

            A claim of prosecutorial
vindictiveness may be established by:  (1) proof of circumstances that pose a
realistic likelihood of misconduct sufficient to raise a presumption of
prosecutorial vindictiveness which the state is obligated to rebut or face
dismissal of the charges; or (2) proof of actual vindictiveness.  Neal v.
State, 150 S.W.3d 169, 173 (Tex.Crim.App. 2004).  Evidence of actual vindictiveness must show,
through objective evidence, that the prosecutor’s decision to charge the
defendant was a direct and unjustifiable penalty that resulted from her
exercise of a protected legal right.  Id. at 174.  If a defendant cannot establish the actual
vindictiveness prong, the court need not address the first prong.  Id.
at 175.  The allegations and conclusions
offered by Roman in her motion and during the hearing simply do not rise to the
level of proof required to show actual vindictiveness.  Appellant’s second issue is overruled.

Failure to
Dismiss Jurors

In her third and fourth
issues, Appellant contends that the trial court erred by not sua sponte dismissing Jurors One and
Sixteen.

During voir dire, Juror Number One informed the
trial court that he had previously been involved in a divorce proceeding and
that he had represented himself pro se.  At the bench, when he was asked whether his
past experiences would prevent him from sitting as a juror, he responded
equivocally stating “it would depend on the situation” and that it was “hard to
say” whether he could put aside his personal experiences and make a decision
based on the evidence admitted during the trial inasmuch as he thought of
himself as a victim of a “woman scorned.” 
Appellant did not challenge Juror Number One for cause nor did she use a
peremptory strike to remove him from the panel.

The State
requested that Juror Number Sixteen be brought to the bench for further
individual voir dire regarding the
nature of her employment with a company that provides litigation support to the
legal community.  Appellant questioned
Juror Number Sixteen about how many people she supervised, how long she had
been with the company, whether she had always held the same position in the
company, whether she had children, and what position her husband, who worked at
the same company, held.  Appellant did not
challenge Juror Number Sixteen for cause, nor did she use a peremptory strike
to remove Juror Number Sixteen from the panel. 
Both Juror Number One and Juror Number Sixteen were seated as jurors.

A prospective
juror is disqualified from serving on a jury and must be excused from the panel
if the prospective juror has been convicted of a felony, is under indictment or
other legal accusation for theft or any felony, or is insane.  See
Tex.Code Crim.Proc.Ann. art.
35.16(a) (West 2006); Warren v. State,
768 S.W.2d 300, 303 (Tex.Crim.App. 1989). 
A trial court must excuse a prospective juror who is disqualified for
the reasons set forth above.  Id.  However, if a prospective juror is not
disqualified under Article 35.16(a) of the Texas Code of Criminal Procedure, a
trial court has no authority to sua
sponte excuse the juror.  Warren, 768 S.W.2d at 303.

There is no
evidence in the record that either Juror Number One or Juror Number Sixteen was
disqualified from serving as a juror under Article 35.16(a) of the Texas Code
of Criminal Procedure.  As a result, the
trial court had no authority to unilaterally excuse these prospective jurors.

Next, in order to
preserve error with respect to a trial court’s erroneous denial of a challenge
for cause, Appellant must establish that:  (1) she asserted a clear and specific
challenge for cause; (2) she used a peremptory challenge to remove that
specific juror about whom she had complained; (3) her peremptory challenges
were exhausted; (4) she made a request for additional strikes which was denied;
and (5) the objectionable juror was seated on the jury.  Davis v.
State, 329 S.W.3d 798, 807 (Tex.Crim.App. 2010).

Here, Appellant
did not challenge either Juror Number One or Juror Number Sixteen for cause.  The record reflects that Appellant used her
peremptory strikes to remove other venire members from the panel but did not
use any of her peremptory strikes on Juror Numbers One or Sixteen.  Given that Appellant failed to preserve these
issues for our review, her arguments could be overruled on this basis alone.

However, broadly
construing Appellant’s issues in the interest of justice, see Cavender, 42 S.W.3d at 296, and assuming she had asserted a
challenge for cause against each of the complained of jurors, her arguments
would still fail.

We review the
denial of a challenge for cause by looking to the entire record to determine
whether there is sufficient evidence to support the ruling.  See
Davis, 329 S.W.3d at 807.  The
question is whether the jurors’ bias or prejudice would substantially impair
their ability to carry out their oath and follow the court’s instructions on
the law.  Id.  Before the trial court
may excuse the juror for cause, the trial court must explain the law to them
and inquire of them whether they can follow the law notwithstanding their
personal views.  Id.  We give considerable
deference to the trial court’s ruling because that court is in the best
position to evaluate the venireperson’s demeanor and responses.  Id.  If the juror’s answers are vacillating,
unclear or contradictory, we will only reverse the trial court where there has
been a clear abuse of discretion.  Id.

A review of the
entire record establishes that the trial court would not have been in error had
it denied a challenge for cause against Juror Numbers One and Sixteen.  While Juror Number One’s answers might be
viewed as equivocal, there is no evidence in the record of a bias or prejudice
so strong in favor of one party that he would base his verdict on those
feelings rather than the evidence.  See Mount v. State, 217 S.W.3d 716, 722-23
(Tex.App.--Houston [14th Dist.] 2007, no pet.). 
With respect to Juror Number Sixteen, the record is completely devoid of
any evidence that might establish that Juror Number Sixteen was biased or
prejudiced either for or against any party.  Id.  Other than the allegations made in Appellant’s
Brief, there is simply nothing on which this Court might make any determination
regarding Juror Number Sixteen.  See McDonald v. State, 64 S.W.3d 86, 89
(Tex.App.--Austin 2001, no pet.).  In
other words, the trial court did not err by failing to sua sponte excuse Juror Number One and/or Juror Number Sixteen.

Issues Three and
Four are overruled.

Comments on the
Weight of the Evidence

            Appellant’s fifth and sixth issues
argue that the trial court erred by commenting on the weight of the evidence once
during voir dire and again during the
cross-examination of a witness.

            During voir dire, the trial court instructed the jury that in Texas a
criminal case proceeds in two phases, and that they would only reach the second
phase “if and only if” the jury found the defendant guilty during the first
phase of the trial.  Near the conclusion
of the State’s voir dire, one of the
members of the venire asked about the possibility of community service versus
jail and a fine as potential punishments should Roman be convicted of the offense
of harassment.  This occurred during an
exchange between the trial court and the prosecutor about whether the State was
going to question the panel about “stage two” of the proceedings.  Following the question from the venire
person, the trial court stated “[t]hose are the factors you needed to get into,
Mr. Moody, that’s why I told you.” 
The State then commenced a discussion with the venire panel about the
punishment range Roman would face if the jury convicted her of the offense charged
in the information.

            Appellant contends that the comments
made by the trial court essentially “tainted Appellant’s presumption of
innocence” because the venire panel heard the judge tell the prosecutor that he
might “want to talk about stage two.”

            In order to preserve a complaint for
appellate review, a defendant must make a timely, specific objection to the
trial court.  Peavey v. State, 248 S.W.3d 455, 470 (Tex.App.--Austin 2008, pet.
ref’d).  This requirement holds true for
improper comments by the trial court.  Id.  Here, Appellant did not object or complain in
any way about the trial court’s comments at the time they were made.  However, Roman argues that she was not
required to object to the trial court’s comments because those comments constituted
fundamental error.  The Court of Criminal
Appeals has held that a trial court’s comments might, in some cases, taint the
presumption of innocence, and such error would be fundamental requiring no
objection.  See Blue v. State, 41 S.W.3d 129, 132 (Tex.Crim.App.
2000)(plurality op.)(trial court apologized to venire panel for long delay and
attributed delay to defendant’s inability to decide whether to accept a plea
bargain and expressed court’s desire that defendant plead guilty).

            In this case, the trial court’s
comments are not comparable to the comments made by the trial court in Blue.  Here, the trial court was simply attempting to
ensure that the venire panel would be able to consider the full range of
punishment, including community service. 
A juror must be able to consider the full range of punishment.  See
Standefer v. State, 59 S.W.3d 177, 181 (Tex.Crim.App. 2001).  Neither the trial court’s comments nor those
subsequently made by the State constituted a comment on the weight of the
evidence sufficient to taint the presumption of innocence.  The trial court’s comments were not error,
let alone fundamental error.

            In Issue Six, Roman asserts that the
trial court erred by commenting on the weight of the evidence during her
cross-examination of Mendoza. 
Specifically, Appellant refers us to the following exchange:

[Roman]:  Okay.  Did you claim to the police officers that you
should -- that there was communication only to be through certified mail?  Did you claim that to the police officers?

 

[Mendoza]:  Yes.  We went through that at the 388th
Court with Judge Macias.

 

[Roman]:  Objection.  He is testifying to -- to the Court order,
but --

 

[Trial Court]:  I
think he has to.  I think he testified
from that question.

 

[Roman]:  Okay.

 

Roman contends
that the trial court’s comment, outlined above, indicated the court’s disbelief
of Roman’s position that Mendoza had provided false information to the police,
thereby “diminishing the credibility of the defense’s approach to the case.”

Again, in order to preserve a complaint for appellate
review, a defendant must make a timely, specific objection to the trial
court.  Peavey, 248 S.W.3d at 470. 
This requirement holds true for improper comments by the trial court.  Id.  Here, Appellant did not object or complain in
any way about the trial court’s comment at the time it was made.  Her objection related to Mendoza’s response
to Appellant’s question.  Because
Appellant failed to make a timely, specific objection to the trial court’s
comment, she failed to preserve this issue for our review and her argument
could be overruled on this basis alone.  However,
broadly construing Appellant’s issues in the interest of justice, see Cavender, 42 S.W.3d at 296, and
assuming she had objected to the trial court’s comment, her argument would
still fail.

A trial judge
shall not make any remark calculated to convey to the jury the judge’s opinion
of the case.  Hoang v. State, 997 S.W.2d 678, 680 (Tex.App.--Texarkana 1999, no
writ)(citing Tex.Code Crim.Proc.Ann.
art. 38.05).  A trial court’s comments
are improper if the court makes a statement that implies approval of the state’s
argument or that indicates any disbelief in the defense’s position or that
diminishes the credibility of the defense in its approach to the case.  Id.

Here, the trial
court was apparently attempting to explain to Roman why the witness’ answer was
proper.  Indeed, the witness answered
Roman’s question directly by responding “[y]es.”  The witness then went on to clarify his
answer.  When Roman objected, the trial
court tried to explain its ruling (which was not ultimately, forthcoming) to
her.  The record does not support Roman’s
contention that the trial court made an inappropriate comment on the weight of
the evidence.  The trial court’s comment
did not in any way indicate either its approval of the State’s argument or
diminish the credibility of the defense’s approach to the case.  See Hoang,
997 S.W.2d at 680.  Accordingly,
Appellant’s fifth and sixth issues are overruled.

Admission of
Hearsay Evidence

            In her seventh issue, Roman
complains that the trial court erred by admitting State’s Exhibit’s 1, 2, and 3
over her hearsay objections and that those Exhibits “reasonably influenced the
jury’s verdict.”  State’s Exhibits 1, 2,
and 3 were a letter and receipts from Orthodontix, Ltd. showing Mendoza’s
payment of $1,575.00.  Roman initially
objected to the admission of these three Exhibits arguing that they had not
been authenticated properly.  Mendoza
testified that he recognized each of the Exhibits because he received them from
Orthodontix, Ltd. at the time that he made payment.  When Mendoza was asked if the Exhibits had
been altered in any way, Roman again objected asserting that “they are not his
signature, they are not made by him, and we don’t know where these came
from.”  In essence, this was a hearsay
objection which was sustained by the trial court.

Subsequent to Mendoza’s testimony that he received all
three exhibits from an Orthodontix, Ltd. employee when his credit card was
charged, the State offered the Exhibits as evidence.  Roman objected on authentication grounds as
to Exhibit 1 and hearsay, lack of authentication and that the document was a
copy as to Exhibit 3.  She made no specific
objection to Exhibit 2.  The trial court
reserved its ruling on Roman’s objections subject to her cross-examination of
Mendoza.  Following that exchange,
Mendoza testified again that he received Exhibits 1, 2, and 3 from Orthodontix,
Ltd. at the time that the documents were created, that he kept copies of them,
and that they were a part of his personal records.  Roman’s position throughout the trial was that
Mendoza had failed to pay his half of the Orthodontix, Ltd. bill and, as a
result, she was required to contact him to ensure that he honored his financial
obligations to their son.  The State
again offered State’s Exhibits 1, 2, and 3 and the trial court stated:  “Well, I guess since folks have been going
back and forth, all I am going to do for the limited purpose of the State’s
Exhibit 1, 2 and 3, are not really for the truth of anything.”  The State argued that the Exhibits were not
hearsay and were being offered as a prior consistent statement under Texas Rule
of Evidence 801(e)(1)(B).  The trial
court then stated “under that consideration, and only so the jury is aware of
that, since there’s been, I guess, this back and forth on these -- on this
particular bill, so for that purpose and that purpose only, the Court is
admitting (e) -- I mean, State’s Exhibits 1, 2, and 3.”

            A trial court’s admission or
exclusion of evidence is reviewed for an abuse of discretion. Torres v. State, 71 S.W.3d 758, 760
(Tex.Crim.App. 2002).  We will not
reverse a trial court’s evidentiary determination unless that determination
falls outside of the zone of reasonable disagreement.  Id.  A trial court’s ruling will be upheld as long
as it is correct on any theory of law applicable to the case.  Santellan
v. State, 939 S.W.2d 155, 167 n.19 (Tex.Crim.App. 1997).  Evidence that is otherwise inadmissible may
become admissible if a party “opens the door” to such evidence.  Williams
v. State, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009), cert. denied, ___ U.S. ___, 130 S.Ct. 3411, 177 L.Ed.2d 326
(2010).  Moreover, the erroneous
admission of evidence is generally non-constitutional error where the trial
court’s ruling merely offends the rules of evidence.  See Tex.R.App.P. 44.2(b); Melgar v. State, 236 S.W.3d 302, 308
(Tex.App.--Houston [1st Dist.] 2007, pet. ref’d).  Non-constitutional error is that which does
not affect substantial rights and is therefore disregarded on appeal.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).  Substantial rights are not affected by the
erroneous admission of evidence if, after examining the record as a whole, we
have a fair assurance that the trial court’s error did not influence the jury
or had only a slight effect.  Motilla, 78 S.W.3d at 355.  In assessing the likelihood that the jury’s
decision was adversely affected by the trial court’s error, we consider
everything in the record, including any testimony or other evidence admitted
for the jury’s consideration, the nature of the evidence supporting the
verdict, the character of the alleged error, and how it might be considered in
connection with the other evidence in the case.  Id.  We also consider jury instructions, the
theories argued by the State and the defense, closing arguments, voir dire and whether the State
emphasized the error.  Id. at 355-56.

            Our review of the record establishes
that Roman repeatedly and consistently contended, throughout the trial, that
Mendoza failed to pay his half of the Orthodontix, Ltd. bill.  This left the jury with a false impression and
opened the door to the admission of State’s Exhibits 1, 2, and 3 to correct
that false impression.  See Houston
v. State, 208 S.W.3d 585, 591 (Tex.App.--Austin 2006, no pet.)(defense
counsel’s cross-examination of a state’s witness that leaves a false impression
as to some fact may open the door to admission of otherwise inadmissible
evidence to correct the false impression).  Further, even if the trial court gave an
incorrect reason for its decision, and we do not so find, State’s Exhibits 1,
2, and 3 were admissible under other theories of law applicable to this case,
i.e. Rule 107 of the Texas Rules of Evidence.[4]  Finally, after having examined the record as
a whole, we are convinced that the admission of State’s Exhibits 1, 2, and 3
did not influence the jury’s verdict in this case.  Appellant’s seventh issue is overruled.

Limitation of
Cross-Examination

            In Issues Eight and Nine, Roman
argues that the trial court erred by not permitting her to effectively
cross-examine the complaining witness and Detective Laura Porter.

            Appellant complains of three instances
during the course of the trial where the trial court limited her
cross-examination of the complaining witness and one instance where the trial
court limited her cross-examination of Detective Porter.  Each is set out below.

[Roman]:  And can you elaborate to the Court and to the
jury what that means, the parent/child relationship, how it was affected?

 

[Mendoza]:  It was affected by you requesting sole
custody of our son, increase in child support and payment of back medical
bills.

 

[Roman]:  Okay. 
And the sole custodian -- custody of the child was granted, correct?

 

[Mendoza]:  It was granted.

 

[Roman]:  Was it fought or did you just give up?

 

[State]:  Objection, relevance.

 

[Court]:  Sustained.

 

[Roman]:  It just goes to motive.

 

[State]:  Sorry. 
Motive as to what, Judge?

 

[Court]:  Well, that’s why I’m sustaining.

 

[Roman]:  Okay.

 

[Court]:  You build your foundation you [sic]
feel.  Sustained.

 

.          .          .

[Roman]:  But, did you communicate to the police
officers that you -- that there was -- communication should only be done
through certified mail, correct?

 

[Mendoza]:  Yes.

 

[Roman]:  Okay. 
The fact is, there is no court order. 
So it was your word to the police officers that, one, that we’re getting
a divorce; two, that you had already paid the orthodontics bill even though you
had not told anyone else; three that the report says that you should only
communicate through certified mail.

 

[Mendoza]:  I asked for that in open court through Judge
Macias.

 

[Roman]:  Okay.

 

[Mendoza]:  I even pinpointed you and your husband and I
said, Judge, please have them to not contact me anymore by e-mail nor
telephone.

 

[Roman]:  Well, unfortunately Judge Macias isn’t here
to say that that’s actually true. I mean, you could say that, but, you know,
there is no evidence to that.

 

[State]:  I’m going to object, Judge. Again, she can
ask questions --

 

[Court]:  Let’s get a question in pursuant to the
Rules.

 

[Roman]:  Well, if we can -- I’d like to introduce
again the -- the modifications, because there is no -- there is no request for
certified mail.

 

[State]:  That’s not relevant to the instant case,
Judge.

 

[Court]:  Well, I’ll sustain that objection.

 

[Roman]:  It’s relevant, Your Honor, because if it wasn’t
certified mail, how were we supposed to contact each other?

 

[Court]:  I don’t understand your question.

 

[Roman]:  Okay.

 

.          .          .

[Roman]:  Before this parent/child modification, had
you ever pressed charges for harassment on me or anybody else?

 

[State]:  Objection, relevance.

 

[Court]:  What is the relevance here?

 

[Roman]:  Well, he’s saying that for 25 years, it’s
been a horrendous interaction, so, I mean -- 

 

[Court]:  I’m going to decide this case, and that’s
what they are going to decide.

 

[Roman]:  Okay.

 

[Court]:  Your all’s 25-year marriage, they’re not
going to decide that one.

 

[Roman]:  It wasn’t 25 years, sir.

 

[Court]:  Whatever it was.  Let’s proceed.

 

[Roman]:  Okay.

 

[State]:  What was the ruling?

 

[Court]:  That is sustained.

 

.         
.          .

[Roman]:  Did you ever contact the suspect or the
co-defendant?

 

[Porter]:  I know that Detective Griffith did and after
the interaction she had with the -- with you, I did not contact you further,
no.

 

[Roman]:  Did you contact the co-defendant?

 

[Porter]:  No.

 

[Roman]:  Are you aware that the co-defendant has a
lawsuit against the City of El Paso?

 

[State]:  Objection, Your Honor, relevance.

 

[Court]:  Sustained. 
Sustained.

 

[Roman]:  Sustained?  Okay. 
Do you have any reason to believe that the co-defendant is
uncooperative?

 

[State]:  Objection, Your Honor, relevance.

 

[Court]:  Sustained.

 

[Roman]:  Was the co-defendant -- 

 

[State]:  Objection, Your Honor -- 

 

[Court]:  Sustained.

 

[State]:  -- relevance.

 

[Court]:  We’re not getting into anything other than
this case.

 

[State]:  And, Judge, I’d ask you to instruct the
defendant to not refer – 

 

[Court]:  Ladies and gentlemen of this jury, you will
not consider anything about any other case other than what is here before
you.  So that’s what you will restrict
your deliberations thereto.

 

In each of the instances noted above, the State asserted a
relevance objection which was sustained by the trial court.  On appeal, Roman argues that by sustaining
the State’s objections, the trial court was inappropriately limiting her right
to cross-examine the witnesses.  She now
claims that had she been permitted to fully cross-examine the witnesses on the
issues outlined above, she would have been able to establish that they were
biased or prejudiced against her and that Mendoza’s testimony was false.  The State counters that Roman failed to
preserve these issues for our review because she did not make timely, specific
objections at trial that the trial court was limiting her cross-examination of
the witnesses.

In order to preserve a complaint for review, a party must
make a timely request, objection or motion to the trial court which sets forth
the grounds for the ruling requested, if those grounds are not apparent from
the context of the request, objection, or motion.  Robinson
v. State, 310 S.W.3d 574, 577 (Tex.App.--Fort Worth 2010, no pet.).  When a trial court excludes evidence, the
party is obligated to make an offer of proof to the trial court explaining the
substance of the excluded evidence or testimony.  Guidry
v. State, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999).  Here, there is no evidence in the record that
Roman ever objected or complained in any way to the trial court that her
cross-examination of the witness was being limited nor did she make any offer
of proof regarding the excluded testimony. 
On the other hand, Roman did attempt to argue the relevance of the
testimony she was attempting to elicit following the trial court’s ruling in
each of the instances above.  Again, in light of Appellant’s pro se status, and broadly construing Appellant’s
issues in the interest of justice, see
Cavender, 42 S.W.3d at 296, we conclude, relative only to the facts of this
case, that Roman sufficiently preserved these two issues for our review.

We review a trial court’s limitation of cross-examination
of a witness for an abuse of discretion. 
Walker v. State, 300 S.W.3d
836, 843 (Tex.App.--Fort Worth 2009, pet. ref’d).  A trial court abuses its discretion if it
acts without reference to any rules or guiding principles.  Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  A trial court abuses its discretion if its
ruling goes beyond the zone of reasonable disagreement.  Walker,
300 S.W.3d at 844.

While a defendant has a constitutional right to
cross-examine a witness, the trial court maintains broad discretion to impose
reasonable limits on that cross-examination. 
See Lopez v. State, 18 S.W.3d 220,
222 (Tex.Crim.App. 2000).  Defendants are
generally entitled to cross-examine a witness by inquiring into any area which
is reasonably calculated to show a witness’s motive, bias or interest in
testifying.  Carroll v. State, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996).  However, the extent to which a defendant might
cross-examine a witness to establish bias rests within the sound discretion of
the trial court.[5]
Ramirez v. State, 976 S.W.2d 219, 223
(Tex.App.--El Paso 1998, pet. ref’d).

       In each of the instances about which
Roman complains on appeal, the trial court properly sustained relevance
objections.  Whether Mendoza elected to
contest sole custody of his son being awarded to Roman was not relevant to
whether Roman committed the charged offense in this case.  Whether the modification order entered by
another court in another case established the manner of communication between
Mendoza and Roman was not relevant as to whether Roman committed the charged
offense in this case.  Whether Mendoza
had ever filed a harassment complaint against any other person was not relevant
to whether Roman committed the charged offense in this case. Finally, the
actions of a co-defendant, not on trial, including whether he may have sued the
City of El Paso, were not relevant to whether Roman committed the offense
charged in this case.

The record is
replete with instances where the trial court permitted Roman to inquire into
multiple other relevant areas during her cross-examination of Mendoza and
Detective Porter which could have established their respective bias or motive
or interest in testifying.  See Carroll, 916 S.W.2d at 497.  Obviously, the jury elected to believe the
witness testimony as it was entitled to do.  See
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000)(“The jury is the exclusive
judge of the credibility of witnesses
and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile
conflicts in the evidence.”).  We
perceive no abuse of discretion on the part of the trial court in sustaining
the relevance objections as outlined above, nor do we find that the trial court
inappropriately limited Roman’s cross-examination of Mendoza or Detective
Porter.  Appellant’s Eighth and Ninth Issues
are overruled.

Conclusion

            Having overruled each of Appellant’s
issues, we affirm the judgment of the trial court.

 

 

October 24, 2012

                                                                        CHRISTOPHER
ANCLIFF, Justice

Before McClure, C.J., Rivera, and
Antcliff, JJ.

 

(Do Not Publish)











[1]
Roman elected to proceed pro se at
trial and is doing the same in this Court.

 





[2]
Roman also argues that Detective Porter should have investigated the
circumstances surrounding the Suit Affecting the Parent Child Relationship
between Roman and Mendoza.





[3]
In light of our conclusion that Roman failed to establish a prima facie case for selective
prosecution, it is clear that the trial court did not err when it denied
Roman’s motion for continuance and order for discovery.





[4]
The Rule of Optional Completeness.





[5]
We also note that a defendant does not have an
absolute constitutional right to impeach the general
credibility of a witness
in any fashion she chooses.  See Hammer v. State, 296 S.W.3d 555, 562 (Tex.Crim.App. 2009).  While the Confrontation Clause guarantees an
opportunity for effective cross-examination, trial courts have the discretion
to limit cross-examination as inappropriate for a number of reasons including
the prevention of harassment, prejudice and marginally relevant interrogation.  Carpenter v. State, 979 S.W.2d 633, 634 (Tex.Crim.App. 1998), citing Delaware v. Van
Arsdall, 475 U.S. 673, 679,
106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Smith v. State, 352 S.W.3d 55, 64 (Tex.App.--Fort
Worth 2011, no pet.).